UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Daniel E. Ayer, Sr.,
     Petitioner

     v.                           Case No. 07-cv-304-SM
                                      Opinion No. 2015 DNH 081
Warden, New Hampshire State Prison,
     Respondent

## **O R D E R**

In August of 1999, petitioner, Daniel Ayer, shot and killed Mark Rowland.  Ayer was tried and convicted of first degree murder.  The New Hampshire Supreme Court affirmed his conviction on appeal, and the United States Supreme Court denied his petition for writ of certiorari.  Ayer's efforts to obtain habeas corpus relief in the state courts were similarly unsuccessful. He then sought habeas relief in this court, advancing nine claims.

Pending before the court are: (1) Ayer's motion to amend his habeas corpus petition; and (2) the State's motion for summary judgment as to all claims advanced in that petition.  For the reasons discussed, Ayer's motion to amend is denied and the State's motion for summary judgment is granted.

I.    Motion to Amend Habeas Petition.

In his motion to amend, Ayer seeks to add a new claim to his pending petition for a writ of habeas corpus. Specifically, he asserts that his constitutionally protected right to access the court has been violated because he did not receive copies of three of the State's filings in this case. In her Report and Recommendation, the magistrate judge properly concluded that Ayer's proposed claim is not appropriate for habeas relief and recommended that the court deny his motion.[1]

After due consideration, I herewith approve the Report and Recommendation of Magistrate Judge Andrea K. Johnstone dated March 30, 2015 (document no. 90), for the reasons set forth therein. Ayer's motion to amend his habeas corpus petition (document no. 87) is denied.

II.   Motion for Summary Judgment on Ayer's Petition.

The court now turns to the nine claims for relief advanced in Ayer's petition, all of which are the subject of the State's motion for summary judgment.

---

[1]    Parenthetically, the court notes that upon receipt of the Report and Recommendation, the State immediately provided Ayer with copies of the documents he claimed not to have received. See Letter of Assistant Attorney General Elizabeth Woodcock, dated March 31, 2015 (document no. 91). Consequently, Ayer's assertion that he has been denied meaningful access to the court in that respect now appears to be moot.

## Standard of Review

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and its amendments to 28 U.S.C. § 2254, the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  And, a habeas petitioner seeking relief under that provision faces a substantial burden insofar as "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

Alternatively, habeas relief may be granted if the state court's resolution of the constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by [the Supreme]
> Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has
> on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies
> the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies
> that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  The Court also

noted that an "incorrect" application of federal law is not

necessarily an "unreasonable" one.

> [T]he most important point is that an unreasonable
> application of federal law is different from an
> incorrect application of federal law . . . . Under
> § 2254(d)(1)'s "unreasonable application" clause, then,
> a federal habeas court may not issue the writ simply
> because that court concludes in its independent
> judgment that the relevant state-court decision applied
> clearly established federal law erroneously or
> incorrectly.  Rather, that application must also be
> unreasonable.

Id. at 410-11 (emphasis in original).  So, to prevail, the habeas

petitioner must demonstrate that "the state court's ruling on the

claim being presented in federal court was so lacking in

justification that there was an error well understood and

comprehended in existing law beyond any possibility for

fairminded disagreement."  Harrington v. Richter, 562 U.S. 86,

103 (2011).

Finally, it probably bears noting that a state court need
not rely upon, nor need it even cite, Supreme Court precedent in
order to avoid resolving a petitioner's claims in a way that is
"contrary to" or involves an "unreasonable application of"
clearly established federal law.  See Early v. Packer, 537 U.S.
3, 8 (2002) ("Avoiding these pitfalls does not require citation
of our cases - indeed, it does not even require awareness of our
cases, so long as neither the reasoning nor the result of the
state-court decision contradicts them.") (emphasis in original).
In fact, even when a state court has summarily rejected a
petitioner's federal claim without any discussion at all, "it may
be presumed that the state court adjudicated the claim on the
merits in the absence of any indication or state-law procedural
principles to the contrary."  Harrington, 562 U.S. at 99
(emphasis supplied).  Under those circumstances - that is, when
"a state court's decision is unaccompanied by an explanation," -
the habeas petitioner still bears the burden of "showing there
was no reasonable basis for the state court to deny relief."  Id.
at 98.

As the Supreme Court has noted, AEDPA's amendments to
§ 2254(d) present a substantial hurdle for those seeking federal
habeas relief.

> If this standard is difficult to meet, that is because
> it was meant to be.  As amended by AEDPA, § 2254(d)
> stops short of imposing a complete bar on federal-court
> relitigation of claims already rejected in state
> proceedings.  It preserves authority to issue the writ
> in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision
> conflicts with this Court's precedents.  It goes no
> further.

Harrington, 562 U.S. at 102 (citation omitted).


Only as to federal claims that were presented to the state court but neither adjudicated on the merits nor dismissed by operation of a regularly-applied state procedural rule, may this court apply the more petitioner-friendly de novo standard of review.  See, e.g., Clements v. Clarke, 592 F.3d 45 52 (1st Cir. 2010) ("In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA. When presented with such unadjudicated claims, the habeas court reviews them de novo.") (citation omitted).


With those principles in mind, the court turns to Ayer's petition and the State's motion for summary judgment.


## Background

On August 20, 1999, Ayer shot and killed Mark Rowland, a social worker who had been working with the New Hampshire Division for Children, Youth and Families.  In resolving the

claims Ayer presented on direct appeal of his state conviction,
the New Hampshire Supreme Court summarized Ayer's criminal
conduct, arrest, interrogation, and conviction as follows:

> Beginning in 1998, the New Hampshire Division for
> Children, Youth and Families (DCYF) became involved
> with the defendant's family, and in July 1999, Family
> Counselor Mark Rowland of the Nashua Children's Home
> was assigned to the defendant's case.  On August 20,
> 1999, Rowland was scheduled to meet with the
> defendant's family.  When Rowland arrived that day, the
> defendant was leaving in his truck.  He informed
> Rowland that he did not want to meet and that he hoped
> Rowland would leave.  The defendant then left the
> property but remained in the immediate area.  Rowland
> did not leave.  When the defendant returned a few
> minutes later, Rowland told the defendant that he would
> not leave.  The defendant then shot Rowland in the head
> and fled in his truck.  Rowland later died from the
> gunshot wound.
>
> Within minutes of the shooting, Officer Martin Matthews
> of the Nashua Police Department received a radio
> dispatch about the shooting and rushed to the scene.
> Immediately after he arrived, emergency medical
> personnel arrived and began treating Rowland.  As soon
> as the scene was secured, Matthews was ordered to begin
> investigating this urgent situation.  He scanned the
> area for potential witnesses to the shooting and for
> anyone who might know where the shooter was.  His
> attention was drawn to a woman, later identified as
> Joan Ayer, the defendant's wife, who was standing near
> the scene, crying hysterically.  As Matthews approached
> Mrs. Ayer, but before he asked any questions, she
> blurted out, "He had said that morning that he was
> going to shoot him," and, "he'd been sitting across the
> street in his truck all morning waiting for him."
> Matthews asked to whom Mrs. Ayer was referring and she
> responded that it was her husband.  When asked who her
> husband was, Mrs. Ayer identified the defendant.  She
> then described the defendant's truck and informed
> Matthews that the defendant had access to firearms.
>
> Matthews conveyed Mrs. Ayer's description of the
> defendant's vehicle to his dispatcher, who then issued

an alert to other officers.  Shortly thereafter,
Officers Matthew Eskridge and Scott Anderson saw the
defendant's truck.  The officers stopped the truck and
arrested the defendant without incident.  While
arresting the defendant, the officers noticed firearms
and ammunition in his truck.  One of the firearms was
later determined to be the murder weapon.  The
defendant was transported to the Nashua Police
Department for booking.  Approximately forty minutes
elapsed from the time the original dispatch was sent
until the defendant was booked at the police station.

At the police station, the defendant waived his <u>Miranda</u>
rights, <u>see</u> <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966),
and gave a formal statement to police.  He stated that
he felt he had been harassed by DCYF and other agencies
for some time and that when Rowland arrived at his home
and would not leave, he "snapped."  He also stated that
he had been contemplating making a "demonstration" for
some time and that a "demonstration" was necessary to
make DCYF and others heed his complaints and concerns.

In 2003, the defendant was convicted of first-degree
murder.  That conviction was reversed on appeal.  Upon
retrial, the defendant was again convicted of first-
degree murder.  This appeal followed.

<u>State v. Ayer</u>, 154 N.H. 500, 502-04 (2006) ("<u>Ayer II</u>").[2]

     As construed by the magistrate judge, Ayer's habeas petition

advances nine claims:

---

     [2]     Ayer's first conviction was overturned on appeal after
the New Hampshire Supreme Court concluded that his
constitutionally protected right to self-representation had been
violated.  <u>See</u> <u>State v. Ayer</u>, 150 N.H. 14 (2003) ("<u>Ayer I</u>").
Having succeeded on that claim once before, Ayer advanced it
again (unsuccessfully) in his direct appeal of his second
conviction.  <u>See</u> <u>Ayer II</u>, 154 N.H. at 515-18.  And, perhaps not
surprisingly, he raises that issue once again in this proceeding.

1.   Ayer was denied his Fifth, Sixth, and
     Fourteenth Amendment rights to represent
     himself at trial when the trial court
     "forced" him to have court-appointed counsel;

2.   Ayer's Sixth and Fourteenth Amendment right
     to confront the witnesses and evidence
     against him was violated when the trial court
     admitted testimony of a witness who had died
     between Ayer's first and second trials, and
     whose testimony was recorded at the first
     trial;

3.   Ayer's Fifth, Sixth, and Fourteenth Amendment
     rights to Due Process and a fair trial were
     violated when the trial court denied Ayer the
     ability to present certain defenses to the
     jury for consideration;

4.   Ayer's Fifth, Sixth, and Fourteenth Amendment
     rights to due process and a fair trial were
     violated when the trial court refused to
     instruct the jury regarding the lesser
     offense of provocation manslaughter;

5.   Ayer's Fifth and Fourteenth Amendment rights
     to due process and not to incriminate himself
     were violated when his statements were
     admitted at trial even though he had not
     voluntarily waived the rights afforded to him
     by Miranda v. Arizona, 396 U.S. 868 (1969);

6.   Ayer's Fifth and Fourteenth Amendment rights
     to due process and not to incriminate himself
     were violated when his statements were
     admitted at trial even though he had invoked
     his right to counsel prior to questioning,
     but was not afforded counsel at that time;

7.   Ayer's Fifth and Fourteenth Amendment due
     process rights were violated when the trial
     court admitted in evidence firearms, weapons,
     and ammunition found in Ayer's truck even
     though the items were not used in the
     commission of the crime, were highly
     prejudicial, and were not introduced for a
     legitimate purpose;

8.    Ayer's Sixth and Fourteenth Amendment right
      to confront the witnesses against him was
      violated when the trial court erroneously
      admitted certain statements made by Ayer's
      wife through another witness, as excited
      utterances, where Ayer's wife did not
      testify; and

9.    Ayer was denied his Sixth and Fourteenth
      Amendment right to the effective assistance
      of counsel when his appointed trial counsel
      suggested Ayer's guilt to the jury by
      focusing on a mental state defense rather
      than a defense asserting that Ayer did not
      engage in the conduct alleged to be criminal.

Report and Recommendation (document no. 57), at 1-3 (construing the factual allegations and legal claims set forth in documents no. 1, 50, 52, and 56). None of those claims has merit and each may be resolved rather briefly.


A.    Ayer's Right to Represent Himself (Claim One).

      Before a criminal defendant may be allowed to represent himself at trial, he first must "knowingly and intelligently" waive his important and constitutionally protected right to counsel. And, he may only do so after having been made aware of the "dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 835 (1975) (citation and internal punctuation omitted). His waiver of the right to counsel and his invocation of the right to self-representation must be clear, unambiguous, and unequivocal.

10

See generally United States v. Betancourt-Arretuche, 933 F.2d 89,
92-93 (1st Cir. 1991); Tuitt v. Fair, 822 F.2d 166, 174-77 (1st
Cir. 1987).

    The New Hampshire Supreme Court considered and rejected
Ayer's claim that the trial court improperly denied him the right
of self-representation.  Specifically, the court concluded that,
"[b]ased upon our review of the record, we agree that the
defendant did not clearly and unequivocally assert the right to
self-representation."  Ayer II, 154 N.H. at 516.[3]

_____

    [3]    The record suggests that Ayer was purposefully evasive
in refusing to specifically waive his right to counsel (or invoke
his right to proceed pro se), despite numerous pointed questions
on that topic from the trial court (which plainly understood that
this was a critical issue).

    Approximately seven times I requested from Mr. Ayer a
    decision as to whether he wished to proceed pro se or
    have counsel appointed for him.  Mr. Ayer made it very
    clear that he was not invoking his right to proceed pro
    se.  He repeatedly declined to make a decision and
    stated that he was not about to "give up one right for
    another."  Mr. Ayer declined to make a decision as to
    whether he would accept the appointment of counsel or
    proceed pro se.  Accordingly, I appointed [two
    attorneys] as his trial counsel.

Ayer II, 154 N.H. at 517 (quoting a post-hearing order issued by
the trial court).  It would appear that Ayer deliberately
withheld any unequivocal and unambiguous waiver of his right to
counsel (and corresponding invocation of his right to proceed pro
se) so that he might, if convicted, once again raise this very
issue on appeal.  Such gamesmanship is, however, doomed to fail —
if there is no unequivocal, voluntary, and intelligent waiver of
a defendant's right to counsel, then he must be represented and
cannot undertake his own defense.

11

Ayer has not shown that the court's conclusion was based upon either an "unreasonable determination of the facts," or that it was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  He is, therefore, not entitled to habeas corpus relief on that claim.

B.   Testimony of Norman Bleau (Claim Two).

Next, Ayer claims that his constitutionally protected right to confront witnesses was violated when the trial court admitted into evidence a transcript of testimony from Norman Bleau - a witness who testified at Ayer's first trial, but who had passed away before Ayer's re-trial.  That claim is, however, procedurally defaulted.

The procedural default doctrine provides that a federal court will not consider a claim for habeas relief that was rejected by a state court for failure to comply with that court's procedural requirements, Coleman v. Thompson, 501 U.S. 722, 732 (1991), provided those procedural requirements amount to "a firmly established and regularly followed state practice," Ford v. Georgia, 498 U.S. 411, 423-24 (1991) (internal quotation marks omitted).  See generally Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012) ("A state court's invocation of a procedural rule to deny

a prisoner's claims precludes federal review of the claims if,
among other requisites, the state procedural rule is a nonfederal
ground adequate to support the judgment and the rule is firmly
established and consistently followed.").

As the court of appeals has observed, a claim for habeas
relief is procedurally defaulted in either of two situations.

> First, a claim is procedurally defaulted if the state
> court has denied relief on that claim on independent
> and adequate state procedural grounds.  Second, a claim
> is procedurally defaulted if it was not presented to
> the state courts and it is clear that those courts
> would have held the claim procedurally barred.

Pike v. Guarino, 492 F.3d 61, 73 (1st Cir. 2007) (citations
omitted).  The doctrine applies whether the procedural default
occurred at trial, on direct appeal, or in the context of a
collateral proceeding, and is "grounded in concerns of comity and
federalism."  Edwards v. Carpenter, 529 U.S. 446, 451 (2000)
(citation omitted).  Because a petitioner who has failed to meet
a state's procedural requirements for presenting his federal
claims has deprived the state court of an opportunity to address
those claims in the first instance, a federal court will consider
them only if the petitioner demonstrates cause for his state-
court default and prejudice resulting therefrom.  Id.
Alternatively, the Supreme Court has carved out a very narrow
exception for those petitioners who can demonstrate that they are

13

"actually innocent" of their crimes of conviction - a rare
exception neither relevant to this case, nor invoked by Ayer.
See generally Dretke v. Haley, 541 U.S. 386 (2004).

Here, the New Hampshire Supreme Court concluded that Ayer
had not preserved the issue concerning Mr. Bleau's testimony for
appellate review and, therefore, it declined to address it.  Ayer
II, 154 N.H. at 520 ("Because an argument that is not raised in a
party's notice of appeal is not preserved for appellate review,
we do not address the issue of Mr. Bleau's testimony.") (citation
omitted).  The issue is, therefore, procedurally defaulted.  See,
e.g., Trevino v. Thaler, 133 S. Ct. 1911, 1917 (2013) ("[A]
conviction that rests upon a defendant's state law 'procedural
default' (for example, the defendant's failure to raise a claim
of error at the time or in the place that state law requires),
normally rests upon 'an independent and adequate state ground.'
And where a conviction rests upon such a ground, a federal habeas
court normally cannot consider the defendant's federal
constitutional claim.") (citations omitted).

Ayer has demonstrated neither cause for his state-court
procedural default nor any prejudice resulting from the
introduction of Mr. Bleau's testimony.  See generally Murray v.
Carrier, 477 U.S. 478, 488 (1986).  Mr. Bleau did not witness the

actual shooting and, at best, his testimony was cumulative and served simply to place Ayer near the scene of the crime at the time of the shooting.  See generally Transcript of Jury Trial, Day 2, July 20, 2000, at 15-30.  Even independent of Mr. Bleau's testimony, the evidence of Ayer's guilt was overwhelming, including the fact that he had made prior threats against DCYF that he shared with two family members (and, on the morning of the shooting, he told his wife he was "going to do what I said I was gonna do"); he shot at Mr. Rowland and then fled the scene; a ballistic examination of the bullet removed from Mr. Rowland's skull matched Ayer's 9mm Makarov pistol, which was recovered from Ayer's truck; and, of course, Ayer's own confession to police that when Mr. Rowland arrived at his home he "snapped," that he had previously been contemplating some sort of "demonstration" to make the State address his complaints and concerns, and that he "had to kill somebody so somebody would listen."  See Ayer II, 154 N.H. at 503; State Habeas Decision (document no. 52-1) at 11.

Because Ayer's claim relating to the testimony of Mr. Bleau is procedurally defaulted, and because Ayer has shown neither cause for that default nor prejudice, he is not entitled to federal habeas corpus relief on that claim.

15

C.   <u>Defenses and Instructions on Lesser Charges</u>
     <u>(Claims Three and Four</u>).

Ayer next asserts that his federal due process rights were violated when the trial court refused to allow him to present certain defenses ("defense of another" and the "right to revolution") and declined to instruct the jury on certain lesser offenses (reckless manslaughter and provocation manslaughter). First, the state supreme court concluded that Ayer's claims regarding reckless manslaughter and the "right to revolution" under the New Hampshire Constitution "were not raised before the trial court." <u>Ayer II</u>, 154 N.H. at 515.  Accordingly, the court declined to address them and they are procedurally defaulted.

The state supreme court addressed and rejected Ayer's remaining claims on the merits, concluding that under the state's criminal laws and based upon the evidence presented at trial, Ayer was not entitled to assert such defenses, nor was he entitled to the requested jury instructions.  See <u>Ayer II</u>, 154 N.H. at 513-15 (concluding, for example, that there was no evidence that Mr. Rowland intended to kidnap Ayer's son and, because Mr. Rowland was engaged in a lawful act when he refused to leave Ayer's property, Ayer was precluded from arguing sufficient provocation to support a finding of manslaughter). <u>See generally</u> <u>Powell v. Tompkins</u>, 2015 WL 1681274, at *5 (1st Cir. April 15, 2015) ("It is, of course, the duty of the state

high court to construe the meaning of state statutes, including
criminal offenses and rules of procedure. . . . The [state
supreme court's] exposition represents the very meaning of the
statute intended by the state legislature, and we are duty bound,
in no uncertain terms, to follow that state precedent.")
(citations omitted).

The State asserts that this court is precluded from
reviewing Ayer's claims, since they were resolved on "independent
and adequate state law grounds."  Respondent's memorandum
(document no. 75-1) at 15.  That argument (which is typically
presented in the context of procedural default) is unclear and
likely incorrect, for reasons the court need not develop here.
See generally Olszewski v. Spencer, 466 F.3d 47, 62 (1st Cir.
2006) ("Independent and adequate state grounds exist where the
state court declined to hear the federal claims because the
defendant failed to meet a state procedural requirement.")
(emphasis supplied).  It suffices to note that Ayer does not
assert that the trial court violated his rights under state law,
nor does he claim the state supreme court got that aspect of its
decision wrong.  Rather, he says the allegedly erroneous trial
court rulings (i.e., its refusal to give the requested jury
instructions or to allow him to assert certain defenses) resulted

17

in the violation of his constitutionally protected right to a
fundamentally fair trial.

Nevertheless, it is plain that Ayer has not borne his burden
under § 2254.  He has not shown that the New Hampshire Supreme
Court's resolution of those claims was based upon an unreasonable
determination of the facts in light of the record evidence, nor
has he demonstrated that it was contrary to, or involved an
unreasonable application of, clearly established federal law (a
burden he bore even though the state supreme court resolved his
claims without reference to federal law or Supreme Court
precedent, see generally Early, 537 U.S. at 8; Harrington, 562
U.S. at 99).  To the contrary, the state court's opinion is well-
reasoned, factually supported, and entirely consistent with both
state law and (more importantly for these purposes) the federal
constitution.

Finally, the court notes that even if it were persuaded that
those claims are subject to the more petitioner-friendly de novo
review, the outcome would be no different.[4]  Ayer has not shown

_____

[4]     As noted above, the magistrate judge concluded that
Ayer properly exhausted his federal due process claims relating
to the jury instructions and defenses - that is, he fully and
fairly presented them to the state's highest court.  An argument
could be made, however, that the state court did not resolve
Ayer's federal constitutional claims but, instead, addressed only
the state law aspects of those claims.  See Ayer II, 154 N.H. at

that the challenged trial-court rulings resulted in a
fundamentally unfair trial or otherwise violated his federally
protected due process rights.  Simply stated, under these
circumstances, Ayer had no federal constitutional right to
present defenses (or to obtain jury instructions) that were
unsupported by the factual record and, therefore, unavailable
under state law.  As the Supreme Court has observed in a related
context:

> It goes without saying that preventing and dealing with
> crime is much more the business of the States than it
> is of the Federal Government, and that we should not
> lightly construe the Constitution so as to intrude upon
> the administration of justice by the individual States.
> Among other things, it is normally within the power of
> the State to regulate procedures under which its laws
> are carried out, including the burden of producing
> evidence and the burden of persuasion, and its decision
> in this regard is not subject to proscription under the
> Due Process Clause <u>unless it offends some principle of
> justice so rooted in the traditions and conscience of
> our people as to be ranked as fundamental</u>.

<u>Patterson v. New York</u>, 432 U.S. 197, 201-02 (1977) (citations and
internal punctuation omitted) (emphasis supplied).


     Because Ayer has not shown that the challenged trial court
rulings were so offensive to firmly rooted principles of fairness
and justice that he was deprived of his constitutionally

---

513-15.  If that is, in fact, the case, Ayer's federal due
process claims would properly be subject to de novo review.

protected right to due process and a fair trial, he is not
entitled to habeas relief on those claims.

D.    Right Against Self-Incrimination (Claims Five and Six).

       Ayer also claims that certain statements he made (and that
were used against him at trial) were obtained in violation of his
Miranda rights.  He asserts that, contrary to the testimony of
two police officers and the factual findings of the trial court
(which were sustained by the state supreme court), he did invoke
his right to counsel during the booking process and prior to his
interrogation.  Thus, he argues his statements to the police were
obtained in violation of his Fifth Amendment rights.  He goes on
to say that, but for those unconstitutionally obtained
statements, the warrant authorizing the search of his truck would
not have issued.  He also claims that those statements should not
have been admitted at trial.


       In addressing that claim on direct appeal, the New Hampshire
Supreme Court first concluded that, "[u]pon review of the record
[which includes a video tape of the booking process], we agree
[with the trial court] that the defendant did not use any words
that invoked the right to counsel during booking."  Ayer II, 154
N.H. at 518.  It also concluded that the trial court supportably
credited the testimony of two police officers, rejected Ayer's

20

contrary testimony, and found that Ayer never invoked his right to counsel during an unrecorded interview with police. <u>Id</u>. 518-19. Accordingly, the court held that Ayer's right to counsel was not violated.

Again, Ayer has failed to carry his burden under 28 U.S.C. § 2254(d). The state court's factual findings are amply supported by the record, and there is not even the slightest suggestion that its legal conclusions were contrary to, or involved an unreasonable application of, clearly established federal law. As to that claim, then, Ayer is not entitled to federal habeas corpus relief.

E.    <u>Introduction of Firearms and Ammunition (Claim Seven)</u>.

Next, Ayer claims that his Fifth and Fourteenth Amendment due process rights were violated when the trial court admitted into evidence ammunition and various firearms that were recovered during a search of his truck. He says those weapons (except, of course, the 9mm Makarov) were not used in the commission of the crime and, therefore, had no relevance. He also asserts, without elaboration, that their introduction was "highly prejudicial."

The state supreme court thoroughly and thoughtfully addressed Ayer's claims under the applicable rules of evidence

21

and held that the trial court permissibly allowed the
introduction of those weapons.  See, e.g., Ayer II, 154 N.H. at
512 ("Evidence of numerous weapons in the defendant's truck could
tend to show that he had planned and prepared to stage some type
of violent act.  Accordingly, the record supports the trial
court's ruling that the presence of weapons in the defendant's
truck was relevant for a purpose other than showing the
defendant's character or disposition.").  See also, Id. at 513
("In sum, because the record supports the admission of the
evidence of the weapons and ammunition in the defendant's truck
under Rule 404(b) we conclude that the trial court did not
unsustainably exercise its discretion.").

     But, as to the constitutional dimensions of Ayer's
evidentiary claims, the state supreme court concluded that Ayer
failed to properly preserve them for appeal and, therefore,
waived them.

          [T]he defendant contends that admitting the evidence of
          weapons and ammunition violated his due process rights
          under the New Hampshire and Federal Constitutions.  The
          defendant, however, does not explain how his rights
          were violated.  He argues only in conclusory terms that
          "the evidence should have been excluded as a matter of
          due process."  Because, in the realm of appellate
          review, a mere laundry list of complaints regarding
          adverse rulings by the trial court, without developed
          legal argument, is insufficient to warrant judicial
          review, we decline to address the defendant's
          constitutional argument.

Ayer II, 154 N.H. at 513 (citation omitted).  That claim is,
then, procedurally defaulted.  And, Ayer has not demonstrated
cause for the procedural default, nor has he shown prejudice.  To
the contrary, both the trial court and the state supreme court
thoroughly explained why evidence of the presence of firearms in
Ayer's truck was properly admitted at his trial: it was relevant
and its probative value was not substantially outweighed by any
risk of unfair prejudice to Ayer.  See, e.g., Id. at 511-13.


F.   Excited Utterances (Claim Eight).

     In his eighth claim, Ayer asserts that the trial court
erroneously admitted his wife's excited utterances to the police
immediately after he shot Mr. Rowland.  That error, says Ayer,
violated his due process right to a fair trial, as well as his
Sixth Amendment right to confront the witnesses against him.


     But, except in rare cases, state evidentiary rulings - even
erroneous ones - do not constitute a basis for habeas corpus
relief on grounds that the petitioner's due process rights were
violated.  As the court of appeals has noted:

        An erroneous evidentiary ruling that results in a
        fundamentally unfair trial may constitute a due process
        violation and thus provide a basis for habeas relief.
        However, to give rise to habeas relief, the state
        court's application of state law must be so arbitrary
        or capricious as to constitute an independent due
        process violation.  To be a constitutional violation, a

23

> state evidentiary error <u>must so infuse the trial with</u>
> <u>inflammatory prejudice that it renders a fair trial</u>
> <u>impossible</u>.

<u>Lyons v. Brady</u>, 666 F.3d 51, 55-56 (1st Cir. 2012) (citations and
internal punctuation omitted) (emphasis supplied).  Here, as
discussed below, the record does not support the view that the
excited utterances were admitted in error.  And, even if one were
to assume that evidence should have been excluded, there is
certainly no support for the claim that its introduction infused
Ayer's trial with "inflammatory prejudice" so great that it
rendered his trial "fundamentally unfair."


As to Ayer's assertion that the introduction of his wife's
excited utterances violated his Sixth Amendment rights, the New
Hampshire Supreme Court addressed, and rejected, that claim on
Ayer's direct appeal.  In so doing, the court properly
identified, and faithfully (and not unreasonably) applied,
clearly established federal law, as embodied in <u>Crawford v.</u>
<u>Washington</u>, 541 U.S. 36 (2004), and <u>Davis v. Washington</u>, 547 U.S.
813 (2006).  <u>See</u> <u>Ayer II</u>, 154 N.H. at 504-11.  The court's
lengthy discussion and reasoning need not be recounted.  It is
sufficient to note that the court ultimately concluded that "Mrs.
Ayer's statements were not testimonial under <u>Crawford</u> and <u>Davis</u>
and [] their admission did not, therefore, violate the
defendant's rights under the Federal Constitution."  <u>Id</u>. at 511.

24

Ayer has not shown, nor is there anything in the record to suggest, that the state supreme court's resolution of that issue was contrary to, or involved an unreasonable application of, clearly established federal law.  Nor has Ayer demonstrated that the state court's decision was based upon an unreasonable determination of facts in light of the record evidence. Consequently, as to that claim, Ayer is not entitled to habeas corpus relief.


G.    Ineffective Assistance of Counsel (Claim Nine).

Finally, Ayer asserts that his trial counsel rendered constitutionally deficient representation by focusing on his mental state (thereby implying to the jury that he actually shot Mr. Rowland), rather than asserting that Ayer did not engage in the charged criminal conduct.  Ayer presented that claim to the state habeas court, which thoroughly addressed all of Ayer's various factual and legal claims.  See State Habeas Decision (document no. 52-1).  Again, it is not necessary to recount the state court's exhaustive discussion of the issue.  It is enough to note that it invoked and faithfully applied the appropriate legal standard, as embodied in Strickland v. Washington, 466 U.S. 668 (1984), and concluded that Ayer had satisfied neither prong of the relevant test.  That is, he failed to show that counsel's performance fell below an objective standard of reasonableness.

Moreover, the court concluded that even if one were to assume that counsel's representation had been constitutionally deficient, Ayer failed to show any resulting prejudice. Consequently, the court denied Ayer's petition for habeas relief.

Again, Ayer has failed to carry his burden under 28 U.S.C. § 2254(d). He has neither shown that the habeas court based its decision on an unreasonable determination of facts in light of the evidence presented, nor has he demonstrated that the court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

### Conclusion

As noted above, Ayer's motion to amend his petition for habeas corpus relief (document no. 87) is denied. His motion to strike (document no. 89) is also denied.

And, for the foregoing reasons, as well as those set forth in respondent's comprehensive memorandum of law, respondent's motion for summary judgment (document no. 75) is granted. The petition for a writ of habeas corpus is denied and the Clerk of Court shall close the case.

Because Ayer has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. Petitioner may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b).  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

     **SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

April 22, 2015

cc:  Daniel E. Ayer, Sr., pro se
     Elizabeth C. Woodcock, Esq.
     Susan P. McGinnis, Esq.